```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PERSON OF SEAN T. O'DONOVAN. | No. 22-mj-1000-DLC |

**MEMORANDUM AND ORDER RE: EMERGENCY MOTION TO INTERVENE, STAY THE GOVERNMENT SEARCH OF CONFIDENTIAL COMMUNICATIONS, AND VACATE THE PRIOR SEARCH PROTOCOL OF PRIVILEGED MATERIALS (DKT. NO. 9)**

Cabell, U.S.M.J.

## I. INTRODUCTION

On January 14, 2022, federal agents seized a cell phone belonging to Sean O'Donovan (O'Donovan or "movant") pursuant to a search warrant issued by this court. O'Donovan, a Massachusetts attorney, has since been indicted on charges relating to an alleged scheme to bribe a city official in connection with his client's application for a Host Community Agreement allowing the client to operate a marijuana dispensary in the city. The seized phone is believed to contain evidence, fruits, and instrumentalities of the alleged offenses.

In its application for the search warrant, the government proposed a process for reviewing and screening out any privileged materials on the phone. A filter team, made up of an Assistant United States Attorney, a legal assistant, and FBI Special Agents, would review the phone's files to identify any privileged or potentially privileged materials. The filter team would turn any

materials it deemed nonprivileged over to the investigative team while withholding privileged materials. As for any "potentially privileged" materials or privileged materials capable of redaction, the filter team would provide them to the court so that the court could determine whether and how the investigative team should see them.

Two days after the execution of the search warrant, O'Donovan filed an emergency motion seeking to vacate and replace the government's proposed search protocol. Under his alternative approach, O'Donovan would have the opportunity to make initial privilege determinations, allowing nonprivileged materials to pass to the investigative team. Any privileged materials would be identified in a privilege log, which the government would then be able to contest.

Since the motion's filing, the parties have communicated in an attempt to resolve the dispute. The government has proposed a modified filter protocol ("the proposed modified protocol") that addresses some of O'Donovan's concerns [Dkt. No. 14], but the parties ultimately have been unable to completely agree on an appropriate protocol. Now, following a review of the parties' filings and information adduced from a hearing held on the motion, the court denies the movant's motion and approves the government's proposed modified protocol. The reasons for the court's ruling are set forth below.

## II.  DISCUSSION

### A.  The Government's Proposed Modified Filter Protocol

Because this dispute turns on the adequacy of the government's proposed modified protocol, the court begins by summarizing how it would operate.

First, a FBI forensic analyst not associated with either the investigative team or the filter team would run certain search terms against the content of the phone to identify responsive materials without reviewing any of the underlying materials themselves.  [Dkt. No. 14, p. 5].  Any materials not captured by the search terms would be deemed non-responsive and would be returned to O'Donovan without either the filter team or the investigative team ever reviewing them.  [*Id.*]; *see* [Dkt. No. 43] (Table identifying the quantity of potentially responsive materials on the phone by category).

Following the return of such materials, the filter team would review the responsive materials.  The filter team would segregate any materials it identified as privileged and non-redactable and then return those materials to the movant.  [Dkt. No. 14, p. 5].

With respect to the remainder of materials, that is, responsive materials identified as "not privileged, privileged but redactable, or otherwise excepted from protection," the filter team would consult with O'Donovan.  [*Id.*].  O'Donovan would have

3

five business days to review these materials and object or assent to their disclosure. [*Id.*]. Any non-disputed materials would pass to the investigative team at the close of the five-day period. [Id.]. By contrast, disputed materials would be submitted to the court under seal for a final determination. [*Id.*]. As such, under the government's proposed modified protocol, the investigative team would never see any non-responsive materials or responsive materials identified as privileged, and would not see any other responsive materials unless O'Donovan first assented to their disclosure or the court determined that disclosure was appropriate.

### B.   Propriety of Filter Teams Generally

In challenging the proposed protocol, O'Donovan argues that any filter team review of attorney-client communications on his phone constitutes a per se violation of the attorney-client privilege. He also argues that allowing the filter team to conduct the first-line privilege review in this case amounts to "an impermissible delegation of judicial power." [Dkt. No. 9, p. 12]. This view is not well-supported by Circuit precedent.

While the First Circuit has not squarely ruled on the issues O'Donovan raises, it has tacitly approved of the use of filter teams. *See, e.g.*, *United States v. Aboshady*, 951 F.3d 1, 5 (1st Cir. 2020) (describing without criticizing government's use of a filter team to among other things "filter out potentially

4

privileged communications" before turning files over to "investigative team")). Various district courts within the Circuit have also presumed without issue or elaboration that the use of a filter team to segregate non-responsive or privileged communications does not run afoul of any established legal precedent. *See United States v. St. George*, No. 19-cr-10059-RGS, 2021 WL 4132662, at *3 n.5, (D. Mass. Sept. 11, 2021) (government's failure to use filter team to segregate non-responsive files raised a "policy" argument but "not a legal one"); *United States v. Keleher*, 516 F. Supp. 3d 162, 170 (D.P.R. 2021); *United States v. Liberty*, No. 19-cr-00030-GZS, 2020 WL 5540193, at *1 (D. Me. Feb. 12, 2020); *United States v. Cadden*, No. 14-cr-10363-RGS, 2015 WL 13683817, at *3 (D. Mass. Dec. 15, 2015) (ordering government to finish taint team review by set deadline). Likewise, other Circuits have "either approved of or recognized and declined to criticize the use of government filter teams." *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1249 (11th Cir. 2021) (collecting cases from the Second, Third, Fourth, Seventh, Eighth, Ninth, and Tenth Circuits).

O'Donovan acknowledges the existence of such precedent but argues that it is not instructive because, unlike the instant case, none of those cases involved a direct challenge to the use of a filter team as violating a defendant's legal rights or established

5

privilege principles.  O'Donovan instead urges this court to adopt the Fourth Circuit's more severe approach in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019).  In that case, federal authorities in Maryland searched a law firm's office and seized a large quantity of client-related materials as part of an investigation into a particular lawyer at the firm and one of that lawyer's clients.  *In re Search Warrant*, 942 F.3d at 165-66.  The seized materials included approximately 52,000 of the lawyer's emails, of which only 116 involved the target client.  *Id.* at 168.  An "extensive" portion of the seized emails were from other members of the law firm and had no connection to the investigation.  *Id.* at 167.  Further, the same United States Attorney's Office that seized the emails and was conducting the taint review was also investigating and/or prosecuting some of the firm's other clients for unrelated crimes.  *Id.*

The Fourth Circuit found that the filter team's review of the seized materials injured the law firm and its clients, reversing the district court's order denying the law firm's motion for a preliminary injunction to halt the review process.  Notably, though, the Court based its holding principally on its concerns over the disproportionate harm the review had on the legal and privacy interests of the target's law firm and its clients, but it did not find or suggest that the use of a filter team to review potentially privileged documents in and of itself impermissibly

6

interferes with the attorney-client privilege. *Id.* at 175 ("When the pertinent legal principles are *properly applied to the unrefuted evidence*, the Filter Team's review . . . was and is injurious to the Firm and its clients.") (emphasis added). The Court highlighted the uncontroverted evidence that fewer than one percent of the seized emails related to the target client and that many of the other emails "contained privileged communications and attorney work product concerning other . . . clients," including clients being separately prosecuted by the same United States Attorney's Office. *Id.* at 172. In short, the serious injury resulted from the filter team intruding into privileged, nonresponsive communications between other lawyers and clients, the overwhelming majority of which had nothing to do with the government's investigation.

The facts here paint a much less concerning picture. As a threshold matter, the government represents, based on its use of search terms, that only approximately 20 percent of the seized materials are responsive to the search warrant, which means that the government under the proposed modified protocol would at the outset be returning approximately 80 percent of the seized materials to O'Donovan without the filter team ever reviewing any of it. Further, the seized materials from O'Donovan's phone would necessarily be limited to his own communications and files, meaning that there is no risk of harm to a broader organization beyond

7

O'Donovan and his clients. Additionally, unlike the lawyers in *In re Search Warrant*, O'Donovan does not appear to have a federal criminal practice or represent anyone being investigated or prosecuted by the United States Attorney's Office.[1] Under these circumstances, the filter team's intrusion into privileged materials here is substantially less in scope and is by design intended to capture only communications responsive to the search warrant.

For these same reasons, there is no real cause for concern that the government will (or even could) use the filter team review as a fishing expedition to find otherwise-undiscoverable evidence of unrelated crimes. Again, the overwhelming majority of evidence would by design be returned to O'Donovan without review by the filter team and the remaining evidence would be subject to review by O'Donovan and/or the court before being provided to the investigative team. Similarly, the proposed modified protocol for the same reasons does not unduly disregard the importance of the attorney-client privilege.

To be sure, the Fourth Circuit in *In re Search Warrant* also held that the magistrate judge's adoption of the filter protocol,

---

[1] O'Donovan asserts that he "maintains a broad practice" that includes criminal defense among several other fields. [Dkt. No. 9, p. 5]. The government contends that O'Donovan "does not appear to have a federal criminal practice" based on the fact that "his name does not appear in a PACER case search for attorneys with cases in the United States District Court for the District of Massachusetts." [Dkt. No. 14, p. 15]. O'Donovan does not contest the government's characterization.

which permitted the filter team in the first instance to determine whether the attorney-client or work product privilege applied to specific documents, constituted an improper delegation to the filter team of the judicial function of resolving privilege disputes.  *In re Search Warrant*, 942 F.3d at 176.  This concern is not present here, however, because even assuming *arguendo* that adopting such a filter protocol constitutes an improper delegation, the defendant agrees that a procedure "which require[s] Mr. O'Donovan's agreement or a [c]ourt [o]rder prior to any productions to the investigative team[] would cure the impermissible delegation."  [Dkt. No. 9, p. 13] (citing *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1243 (11th Cir. 2021)).  The proposed modified protocol does just that: the filter team cannot provide any materials to the investigative team over Mr. O'Donovan's objection unless it obtains a court order.  Accordingly, the modified protocol assuages any concerns about improper judicial delegation.

### C. Further Objections to the Modified Protocol

In addition to his broader concerns about violation of legal privilege and improper delegation of judicial functions, O'Donovan raises three objections about the adequacy of the filter protocol in practice.  As discussed below, the proposed modified protocol reasonably responds to each of these concerns.

9

1. *Nonresponsive Materials*

In likening this case to *In re Search Warrant*, O'Donovan points out that the "vast majority of the materials seized here relate to other clients and matters, far afield from the government's current focus on marijuana licensing issues." [Dkt. No. 17, p. 2] (internal quotation omitted). As previously noted, the government has represented that approximately 80 percent of the seized materials are not responsive to the search warrant. Under the proposed modified protocol, the government will return those materials to O'Donovan without either the filter team or the investigative team ever reviewing them. As such, the modified protocol greatly reduces or even eliminates any issues surrounding the filter team reviewing privileged, nonresponsive materials.

2. *Risk of Inadvertent Disclosure*

In his motion, O'Donovan cites to several cases where filter teams improperly provided privileged materials to investigative teams or investigative teams reviewed privileged materials without a privilege review at all. [Dkt. No. 9, pp. 10-11]. Filter teams are made up of government agents, the argument goes, and those agents have an interest in furthering the investigation such that they tend toward over-disclosure to the investigative team. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006)

("[T]he government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion."). According to O'Donovan, allowing the filter team, with its inherent bias toward over-disclosure, to make privilege determinations is likely to result in the improper disclosure of privileged materials to the investigative team. This, he reasons, militates in favor of allowing him rather than the filter team to make those determinations.[2]

As discussed above, the proposed modified protocol is set up in such a way that the filter team will not turn any materials over to the investigative team without (1) providing O'Donovan an opportunity to object to their disclosure and (2) obtaining a court order when and if O'Donovan objects. The court is satisfied that the proposed modified proposal adequately minimizes the risk of inadvertent or improper disclosure to the investigative team.

3. *Movant's Participation in the Modified Protocol*

Finally, O'Donovan notes in his motion that the original filter protocol described in the search warrant application provides no meaningful opportunity for defense counsel to participate in the review process. [Dkt. No. 9, p. 13]. O'Donovan does not cite to any authority holding that an individual whose property is seized has a right to participate in any privilege

---

[2] The court notes that O'Donovan has a countervailing incentive to take an overbroad view of privilege regarding the seized materials in order to minimize the information passed to the investigative team.

11

review process, nor is this court aware of any.  In any case, the proposed modified protocol provides O'Donovan with the meaningful opportunity he seeks, as he now has the chance to object to the disclosure of any materials and to litigate those objections before the court.  To the extent that O'Donovan takes issue with the modified protocol's five-business-day timeframe for him to object, the court has no basis to deem it unreasonable in a vacuum, and O'Donovan may always request additional time as needed if warranted under the circumstances.

### III. CONCLUSION

For the foregoing reasons, the emergency motion to intervene, stay the government search of confidential communications, and vacate the prior search protocol of privileged materials [Dkt. No. 9] is DENIED.  The court hereby approves the proposed modified filter protocol laid out in the government's response to the present motion [Dkt. No. 14].[3]  The government may now continue its review of the seized materials consistent with this protocol.

So Ordered.                              /s/ Donald L. Cabell
                                         DONALD L. CABELL, U.S.M.J.

DATED:  October 17, 2022

---

[3] In ruling on this motion, the court makes no finding as to the adequacy of the original filter protocol or any other protocols not presented in this case.